UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| REGIONAL SCHOOL DISTRICT NO. 9 : <br> BOARD OF EDUCATION, : <br> Plaintiff, : <br> : <br> : <br> v. : <br> : <br> MR. AND MRS. P, AS PARENTS AND : <br> NEXT FRIENDS OF M.P., A Minor Child, : <br> AND THE STATE OF CONNECTICUT : <br> DEPARTMENT OF EDUCATION, : <br> Defendant. : | Civil Action No. <br> 3:06 CV 01278 (CFD) |

**RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff, the Regional School District No. 9 Board of Education ("School District"), seeks review under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA"), of a Connecticut administrative decision ordering the School District to reimburse the defendants, Mr. and Mrs. P, acting as next friends of their son M.P., for certain private school tuition costs. The parties' cross-motions for summary judgment are pending.[1]

**I.    Background**[2]

M.P., born on June 14, 1990, suffers from a form of autism known as Pervasive

---

[1] Defendant the State of Connecticut Department of Education also filed a motion for summary judgment, which the School District did not oppose [Dkt. # 45]. The Court granted the motion and terminated the State of Connecticut as a party.

[2] The facts are taken from the parties' summary judgment papers and Local Rule 56(a) statements, as well as the Hearing Officer's Final Decision and Order. They are undisputed unless otherwise noted.

Developmental Disorder-Not Otherwise Specified ("PDD-NOS").  Based on this diagnosis, M.P. qualifies for special education services under the IDEA.  See 20 U.S.C. § 1401(3)(a)(i).  At all relevant times, M.P. was a resident of Redding, Connecticut.  The Redding Board of Education is responsible for the education of Redding residents prior to high school.  When Redding residents reach high school, the responsibility for their education shifts to the plaintiff, the Regional School District No. 9 Board of Education.

M.P. received special education services under IDEA in the Redding Public School system through the end of seventh grade.  In September 2003, however, Mr. and Mrs. P unilaterally placed M.P. in the residential program at Devereux Glenholme ("Devereux"), a private special education school in Washington, Connecticut.  The defendants claim that they moved M.P. to Devereux because of his increased and unaddressed difficulties in the Redding public school system.

When M.P. entered the ninth grade in 2004, the Regional School District No. 9 became responsible for his education.  In that capacity, and after meetings with a Planning and Placement Team ("PPT") preceding both the 2004-2005 and 2005-2006 school years, the School District proposed individualized education programs ("IEPs") for M.P.  These IEPs called for M.P. to transfer to Joel Barlow High School ("JBHS"), the District's public high school.  Mr. and Mrs. P rejected both proposals, contending that the IEPs did not meet M.P.'s needs.  M.P. remained at Devereux for both school years; the parties dispute whether he made progress while enrolled at Devereux.

In November 2005, the defendants requested reimbursement from the School District for the educational and residential costs of sending M.P. to Devereux for the two school years.  The

School District denied the reimbursement. At the defendants' request, the State of Connecticut Department of Education held a special education due process hearing to determine whether the defendants were entitled to reimbursement for M.P.'s placement at Devereux in 2004-2005 and 2005-2006. The Hearing Officer held that while the "District's proposed program for [M.P.] . . . was largely appropriate[,] . . . several components of the proposed IEPs related to transitioning [M.P.] from Devereux to JBHS were not fully thought through or developed or adequately documented." State Department of Education Final Decision and Order No. 05-361, at *4 (July 10, 2006). The Hearing Officer noted that the IEPs failed to include an adequate plan to transition M.P. from Devereux to JBHS; provide sufficient training for M.P.'s teachers; include a family training and communication component; adequately account for follow-up meetings; include a clear plan for assessing M.P.'s assistive technology needs; or outline a sufficient plan for addressing transportation issues. Id. at 19-21. Based on these deficiencies in areas "necessary" and "critical" to M.P., the Hearing Officer concluded that the District failed to offer the free and appropriate public education ("FAPE") required by the IDEA. Id. at 4. The Hearing Officer ordered the School District to reimburse the defendants for the cost of M.P.'s two years at Devereux, less residential costs. The School District did not implement the order, but rather appealed the Hearing Officer's decision to this Court. See 20 U.S.C. § 1415(i)(2)(A); Conn. Gen. Stat. § 10-76h(d)(4).

      The parties' cross motions for summary judgment present two issues: whether the Hearing Officer properly concluded that first, the School District's proposed plans failed to provide M.P. with a free appropriate public education, and second, that Devereux was an appropriate alternative placement. The School District argues that the Hearing Officer erred in

its determination as to FAPE by applying a "maximization standard" to the proposed IEPs, and further erred in concluding that Devereux was an appropriate educational program because M.P.'s progress there is disputed.

## II.     Standard of Review

Ordinarily, summary judgment is warranted if the moving party establishes that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and that it is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A motion for summary judgment serves a distinct role in IDEA actions, however, "trigger[ing] more than an inquiry into possible disputed issues of fact."  Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ., 397 F.3d 77, 83 n.3 (2d Cir. 2005).  The Court's role at the summary judgment state of an IDEA action is "in substance an appeal from an administrative determination."  Id. (quoting Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 892 (9th Cir. 1995)).  While "[t]he responsibility for determining whether a challenged IEP will provide a child with an appropriate public education rests in the first instance with administrative hearing and review officers[,] . . . [t]heir rulings are . . . subject to 'independent' judicial review," Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 129 (1998).  In other words, "[t]he inquiry . . . is not directed to discerning whether there are disputed issues of fact, but rather, whether the administrative record, together with any additional evidence, establishes that . . . the child's educational needs have been appropriately addressed." A.S. ex rel. Mr. and Mrs. S. v. Norwalk

Bd. of Educ., 183 F. Supp. 2d 534, 539 (D. Conn. 2002) (quoting Wall v. Mattituck-Cutchogue Sch. Dist., 945 F. Supp. 501, 508 (E.D.N.Y. 1996)).

The reviewing court's role is strictly limited, however.  Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 380-81 (2d Cir. 2003).  Independent review "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."  Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).  Although federal courts may "not simply rubber stamp administrative decisions, they are expected to give 'due weight' to these proceedings" because of the judiciary's general lack of "'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy.'" Walczak, 142 F.3d at 129 (quoting San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 42, (1973)).  "Deference is particularly appropriate when . . . the state hearing officers' review has been thorough and careful."  Id.

**III.    Analysis**

The IDEA is "an ambitious federal effort to promote the education of handicapped children" by awarding federal assistance to states that provide a free and appropriate public education to disabled children.  Rowley, 458 U.S. at 179, 181.  To achieve FAPE, a state must provide each disabled child with an "individualized education program."  Id. at 181.  The IEP should be "the result of collaborations between parents, educators, and representatives of the School District."  Lillbask, 397 F.3d at 81 (internal citations omitted).  While the IEP need not maximize the child's educational potential, it must provide "meaningful" opportunities and the possibility for more than "trivial advancement." Walczak, 142 F.3d at 130 (2d Cir. 1998)

(internal citations omitted).  Where, as here, the parents of a disabled child unilaterally placed the child in a private school, the Court must ask two questions to determine whether they are entitled to reimbursement: "[F]irst, whether the challenged IEP was adequate to provide the child with a free appropriate public education; and second, whether the private educational services obtained by the parents were appropriate to the child's needs."  M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ., 226 F.3d 60, 66 (2d Cir. 2000) (citing Walczak, 142 F.3d at 129; Still v. DeBuono, 101 F.3d 888, 891 (2d Cir.1996)).

### A.     The Adequacy of the IEPs

The Court finds no basis in the record for overturning the Hearing Officer's decision that the proposed IEPs failed to comply with the IDEA.  The Supreme Court has established a two-part inquiry for courts reviewing administrative determinations as to IEPs, as follows: "First, has the State complied with the procedures set forth in the Act?  And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?"  Rowley, 458 U.S. at 206-07.  Because the plaintiff does not claim procedural violations, this Court's inquiry is limited to the second question.  See, e.g., B.L. v. New Britain Bd. of Educ., 394 F. Supp. 2d 522, 533 (D. Conn. 2005).  "For an IEP to be reasonably calculated to enable the child to receive educational benefits . . . it must be likely to produce progress, not regression."  M.S. ex rel. S.S. v. Bd. of Educ. of the City Sch. Dist. of the City of Yonkers, 231 F.3d 96, 103 (2d Cir. 2000) (citations and quotation marks omitted).  A reviewing court must, therefore, "examine the record for any 'objective evidence' indicating whether the child [was] likely to make progress or regress under the proposed plan."  Walczak, 142 F.3d at 130 (2d Cir. 1998) (citation omitted).  The objective evidence supports the Hearing

6

Officer's conclusion that the six deficiencies he identified in the proposed IEPs would likely have caused M.P. to regress.

More specifically, the Hearing Officer pointed to six areas of the District's proposed programs that "fell short," and which indicate that M.P. was likely to regress under the District's proposals.  See Final Decision and Order 05-361, *19-21.  First, the District's planning for transitioning M.P. from Devereux to JBHS was inadequate and/or inadequately documented.  Id. at *19.  The Hearing Officer reasoned that even if the District's transitioning plan may have satisfied the IDEA, that the plans were not "fully developed and documented so that the Parents at the PPT [] could determine their adequacy" was a "basis for finding that the District failed to adequately plan for [M.P.'s] transition."  Id. at *19-20.  Second, the Hearing Officer held that the District's proposals failed to adequately provide training for M.P.'s teachers.  Id. at *20. Because "proactive training and collaboration would be critical to assure that all of [M.P.'s] teachers were consistent in their understanding of [M.P.'s] needs and their approach to him," the IEPs' call for a "voluntary generic training session . . . [was] inadequate."  Id.  Third, the District failed to provide a family training/family communication component that would have been "necessary to provide at a minimum for a communication protocol between home and school to support [M.P.'s] functioning in school."  Id.  Fourth, the District failed to include a component of formal, frequent follow-up team meetings to assess the M.P.'s transition to JBHS.  Id. at 21. The District's plan did not include a formal review of M.P.'s adjustment for eight weeks.  Id. "[G]iven [M.P.'s] circumstances," the Hearing Officer concluded, "more structure is required particularly during the early phases of [M.P.'s] enrollment at JBHS."  Id.  Fifth, the Hearing Officer concluded that the District failed to define a clear plan for assessing M.P.'s assistive

technology needs. Id. Finally, the Hearing Officer concluded that the District failed to define an appropriate plan for addressing M.P.'s transportation issues.

The Hearing Officer's conclusion that the IEPs did not ensure FAPE is supported by objective evidence that, given these six deficiencies, M.P. was likely to regress rather than progress. For example, the record of the administrative hearing demonstrated that the School District's IEPs did not adequately provide for or adequately document a transition plan for M.P. The School District's proposals did not include a transition plan, and M.P.'s Devereux social worker testified at the administrative hearing that the District did not address this issue at the meetings in which the parties discussed M.P.'s possible transfer to JBHS. Additionally, the objective evidence demonstrated that the proposed IEPs provided only for voluntary and non-specific JBHS teacher training. Although the School District's plans may have been adequate in most areas, the record supports that their failure in several key areas was likely to produce regression rather than progression. Further, while the School District argues that the Hearing Officer applied a "maximization standard" and that the six deficiencies the Hearing Officer listed were unnecessary "extras," it is clear from the Final Order that the Hearing Officer regarded at least some of the deficiencies as "necessary," "critical," and "required" to provide M.P. with a FAPE.

      **B.**    **Devereux as an Appropriate Alternative**

The Court additionally finds no basis for overturning the Hearing Officer's decision that Devereux was an "appropriate" alternative to JBHS. Although Devereux has not been completely successful for M.P., an alternative private program need not be perfect and need not meet the IDEA's FAPE requirement. Frank G. v. Bd. of Educ. of Hyde Park, Cent. Sch. Dist.,

459 F.3d 356, 364-65 (2d Cir. 2006). Rather, a parent must show only that the placement "provides educational instruction specially designed to meet the [child's] unique needs" and that it is "supported by such services as are necessary to permit the child to benefit from instruction." Id. at 365 (quoting Rowley, 458 U.S. at 188-89). The Second Circuit articulated that private placement is appropriate if it is more likely to produce progress rather than regression. See id. at 364. As the record demonstrates, and as the Hearing Officer explained, Devereux's specialized curriculum was designed precisely "to address the educational, emotional, social, social skills and behavioral needs of students" like M.P. The evidence in no way suggests that Devereux's program was not calculated to confer an adequate benefit.[3]

### C.  Subsidiary Arguments

The Court is also not persuaded by the School District's subsidiary arguments. Contrary to the School District's assertion, the defendants adequately raised both M.P.'s 2004-2005 and 2005-2006 IEPs in their request for a hearing. In questioning whether the School District was responsible for the cost of M.P.'s tuition at Devereux for the 2005-2006 school year, it implicitly raised the issue of whether the proposed 2005-2006 IEP was appropriate. Additionally, because the Hearing Officer's decision was not based solely on the IEPs' incomplete transition plan, the Court need not address the School District's argument that it was not responsible for M.P.'s educational programming during the summer of 2004.

---

[3] The plaintiff's argument that M.P. made little or no progress is not persuasive. When determining whether private placement was appropriate, the question is primarily whether the placement was *calculated* to confer an educational benefit, not whether the student *actually* made progress. Although courts may consider a child's record of success (or lack thereof), it is not dispositive. Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 115 (2d Cir. 2007). Furthermore, the Hearing Officer was reasonable in concluding based on the record that M.P. made progress, albeit little, while at Devereux.

9

Next, the School District also argues that the defendants are not entitled to reimbursement because they accepted Devereux's IEPs before the School District had an opportunity to make FAPE available to M.P.  The Second Circuit previously rejected a nearly identical argument, concluding it was contrary to the IDEA's purpose and violative of traditional rules of statutory construction.  Hyde Park, 459 F.3d at 372.  As the Second Circuit noted, it would "place the parents of children with disabilities in the untenable position of acquiescing to an inappropriate placement in order to preserve their right to seek reimbursement from the public agency that devised the inappropriate placement."  Id.

Finally, the School District also suggests that it was unable to provide a complete IEP because Mr. and Mrs. P failed to cooperate fully during M.P.'s PPTs.  The IDEA does instruct that reimbursement for private schooling "may be reduced or denied . . . upon a judicial finding of unreasonableness with respect to actions taken by the parents."  20 U.S.C. § 1412(10)(C)(iii)(III).  Courts have, thus, held that parents have a duty to notify a School District of their dissatisfaction with a proposed IEP.  Voluntown, 226 F.3d at 68 ("[A] distinction should be made 'between a unilateral parental transfer made after consultation with the school system, yet still an action without the system's agreement, and transfers made truly unilaterally, bereft of any attempt to achieve negotiated compromise and agreement.'") (citing Town of Burlington v. Dep't of Educ., 736 F.2d 773, 779 (1st Cir. 1984), aff'd, 471 U.S. 359 (1985)).  This is not a case of parental transfer made without any attempt to compromise; rather, Mr. and Mrs. P participated in all of M.P.'s PPTs and timely informed the School District that they were dissatisfied with the proposed IEPs.

**IV.     Conclusion**

       For the reasons set forth above, the defendants' motion for summary judgment [Dkt. # 55] is GRANTED.  The plaintiff's motion for summary judgment [Dkt. # 59] is DENIED.  SO ORDERED this    12th     day of January 2009 at Hartford, Connecticut.  The Clerk is directed to close this case.

                         /s/ Christopher F. Droney  
                        **CHRISTOPHER F. DRONEY**  
                        **UNITED STATES DISTRICT JUDGE**